UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                                                             :     **MEMORANDUM & ORDER**
            v.                                               :     20-CR-293 (WFK)
                                                             :
CHRISTIAN WILLIAMS,                                          :
                                                             :
                    Defendant.                               :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
On June 30, 2021, Defendant pled guilty to Count Two of a two-count Indictment in 20-CR-293,[1]
charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1)
and 924(a)(2). Plea Agreement ¶ 1, ECF No. 47; Indictment ¶ 2, ECF No. 1, 20-CR-293. Also on
June 30, 2021, Defendant waived indictment and pled guilty to all counts of a three-count
Information in 21-CR-312, charging Defendant with (1) racketeering, in violation of 18 U.S.C. §§
1961(1), 1961(5), 1962(c), and 2; (2) assault-in-aid-of racketeering, in violation of New York
Penal Law ("NYPL") §§ 120.05(2) and 20 and 18 U.S.C. §§ 1959(a)(3) and 2; and (3) possessing,
brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§
924(c)(1)(A)(i)-(iii) and 2. Information, ECF No. 7, 21-CR-312; Agreement, ECF No. 9, 21-CR-
312. The Court now sentences Defendant and provides a complete statement of reasons pursuant
to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the
reasons set forth below, Defendant is hereby sentenced to time served, to be followed by two years
of supervised release with both the standard and special conditions of supervision; forfeiture in
accordance with the Order of Forfeiture; and payment of a mandatory special assessment of
$400.00.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department

led the investigation into Defendant and other gang members for the instant offenses. Presentence

Investigation Report ("PSR") ¶ 16, ECF No. 620. Defendant is a member of the No Love City

("NLC") set, or neighborhood-based subgroup, of Folk Nation Gangster Disciples ("GD"), a

violent street gang operating out of Brooklyn, New York. *Id.* ¶¶ 16, 44. Central to GD's tenets is

---

[1] All docket citations and references to "Counts" of convictions are to 20-CR-293 unless otherwise stated.

the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang. *Id.* ¶ 16.

*2014 – 2016 Use of Counterfeit Currency*

Between February 2014 and January 2016, Defendant used counterfeit money. *Id.* ¶ 39. Specifically, during that time, Defendant would (1) pay an individual 50 cents on the dollar for counterfeit United States currency, (2) use that counterfeit money at stores, and (3) return the items purchased with counterfeit funds for cash refunds. *Id.*

*April 8, 2014 Shooting*

Defendant was involved in a shooting on April 8, 2014. *Id.* ¶ 22. On that date, Defendant and co-conspirators drove two cars to Canarsie, Brooklyn, which is rival gang territory, to retaliate for the shooting death of a gang member. *Id.* ¶¶ 22, 29. They drove around in Canarsie until they found four individuals. *Id.* After making a U-turn, they exited their cars and shot at the individuals more than 10 times. *Id.* Fortunately, no one was shot, despite their efforts. *Id.*

*Late 2015 Attempted Shooting*

Defendant was also involved in a shooting in late 2015. Addendum to the PSR at 1-2, ECF No. 691. As Defendant testified during the 2022 trial of four of Defendant's fellow gang members, in either November or December of 2015, Defendant and four co-conspirators drove to Manhattan to shoot an individual. *Id.* Right before Defendant attempted to leave the car with his gun, a co-conspirator told him there were too many police officers nearby and they may not be able to successfully flee. *Id.* Defendant claimed at that point he no longer wanted to participate in the shooting and left. *Id.*

*March 14, 2020 Shooting*

Soon after midnight on March 14, 2020, Defendant and other GD members became involved in a dispute with other individuals at a bar in Prospect Lefferts Gardens, Brooklyn, including a rival gang member of the Outlaw Gangsta Crips ("John Doe #1"). PSR ¶ 19. As the argument escalated, John Doe #1[2] used gang signs, including two gang signs indicating his allegiance to a rival gang and one sign intended to disrespect GD. *Id.* Surveillance footage shows the confrontation moved outside the bar, where co-defendant and fellow gang member Davon Brown took out a gun and fired it once into the air. *Id.* ¶ 20. Defendant then spoke with co-defendant Brown, who gave the gun to Defendant. *Id.* Defendant then walked behind John Doe #1 and non-fatally shot him at close range in the buttocks. *Id.* ¶ 20. John Doe #1 required surgery for his injuries. *Id.*

Defendant fled the scene of the shooting, while co-defendant Brown remained at the scene and told police officers he did not hear any gunshots. *Id.* Police officers recovered a .22 Magnum caliber revolver half a block south, which was the path Defendant took when he fled. *Id.* Subsequent testing revealed 69% of the DNA found on the gun belonged to Defendant, with the remaining DNA belonging to co-defendant Brown and a third person. *Id.* Investigators also discovered the gun was stolen. *Id.*

The day after the shooting, Defendant placed the clothes he wore during the shooting in a black bag and left it in a gang member's car. *Id.* ¶ 21. Defendant then texted the gang member and told him to dispose of the bag because Defendant knew he was captured on camera wearing the clothes during the shooting. *Id.*

---

[2] The Indictment in 20-CR-293 refers to this victim as John Doe #1, whereas the Information in 21-CR-312 refers to the same victim as John Doe #2. For clarity, the Court refers to this victim throughout as John Doe #1. *See* PSR at 6 n. 1.

3

*2020 Marijuana Distribution Conspiracy*

Between March 2020 and August 2020, Defendant conspired with others to distribute marijuana. *Id.* ¶ 40. As part of the conspiracy, Defendant acted as a street-level seller of marijuana. *Id.*

*Procedural History*

On August 6, 2020, a grand jury returned a two-count Indictment against Defendant and co-defendant Brown. Indictment in 20-CR-293, ECF No. 1. Count Two of the Indictment charged Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* ¶ 2. The Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 3-4. On August 11, 2020, FBI agents and local law enforcement arrested Defendant without incident. PSR ¶ 43.

On June 30, 2021, Defendant pled guilty to Count Two of the Indictment. Plea Agreement ¶ 1, ECF No. 47. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment for the Indictment at 120 months or below. *Id.* ¶ 4.

On that same day, Defendant also waived indictment and pled guilty to a three-count Information in 21-CR-312. Information, ECF No. 7, 21-CR-312; Agreement, ECF No. 9, 21-CR-312. The Information alleges Defendant was a member of Folk Nation Gangster Disciples, which is an "enterprise" as defined by 18 U.S.C. §§ 1961(4) and 1959(b)(2) that engaged in racketeering activity. Information ¶¶ 4, 7. Count One of the Information charges Defendant with racketeering, in violation of 18 U.S.C. §§ 1961(1), 1961(5), 1962(c), and 2. *Id.* ¶¶ 8-20. Count Two charges Defendant with assault-in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20 and 18

4

U.S.C. § 1959(a)(3) and 2. *Id.* ¶¶ 21-23. Count Three charges Defendant with possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. *Id.* ¶ 24. In connection with his plea to Count One of the Information, Defendant admitted to seven racketeering acts: uttering counterfeit obligations, in violation of 18 U.S.C. §§ 472 and 2 (Racketeering Act One); dealing in counterfeit obligations, in violation of 18 U.S.C. §§ 473 and 2 (Racketeering Act Two); conspiracy to murder rival gang members, in violation of NYPL §§ 125.25(1) and 105.15 (Racketeering Act Three); attempted murder, in violation of NYPL 125.25(1), 110.00, and 20.00 (Racketeering Act Four); attempted murder, in violation of NYPL 125.25(1), 110.00, and 20.00 (Racketeering Act Five); marijuana distribution conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Racketeering Act Six Part A); marijuana distribution, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2 (Racketeering Act Six Part B); obstruction of justice conspiracy, in violation of 18 U.S.C. §§ 1512(c)(1) and 1512(k) (Racketeering Act Seven Part A); and obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(1) and 2 (Racketeering Act Seven Part B). Information ¶¶ 10-20. The Information in 21-CR-312 also contains criminal forfeiture allegations as to all counts. *Id.* ¶¶ 25-28.

Defendant provided substantial assistance to the Government and testified at the trial in October and November 2022 of co-defendants Oluwagbenga Agoro, Lorenzo Bailey, Quincy Battice, and Jean Fremont, resulting in guilty convictions. Probation Recommendation at 3, ECF No. 620-1.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A.     The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1.          Family and Personal Background

Defendant was born on July 7, 1995 in Brooklyn, New York. PSR ¶ 105. Defendant's parents separated before his birth. *Id.* Defendant's father passed away on March 7, 2020. *Id.* Defendant's mother and her boyfriend as well as Defendant's siblings are aware of the instant offense and remain supportive. *Id.*; *see id.* ¶ 106. Defendant had a childhood free from abuse. Addendum to the PSR at 6.

6

### 2.    Educational and Employment History

Defendant attended Murry Bergtraum High School in Manhattan, New York.  PSR ¶ 124.

After completing tenth grade, Defendant was arrested and did not return to school.  *Id.*

Defendant was unemployed from May 2020 until his instant arrest in August 2020.  *Id.* ¶

126.  During the COVID-19 pandemic, Defendant worked as a temporary home health aide.  *Id.*

¶ 127.  Defendant reported additional employment prior to the pandemic at a retail store and as a

construction laborer.  *Id.* ¶¶ 128-129.

### 3.    Prior Convictions

In addition to the conduct charged in the instant case, Defendant has two prior

convictions.  At age 16, Defendant was arrested twice—for Robbery in the Second Degree (Class

C Felony) in 2011 and Attempted Robbery in the Second Degree (Class D Felony) in 2012.  *Id.*

¶¶ 94-95.  Both of these were adult offenses, although Defendant was adjudicated as a youthful

offender after his guilty plea.  *Id.*; *see also* Addendum to the PSR at 6.

### 4.    Physical and Mental Health

Defendant has suffered from physical and mental health conditions while incarcerated,

according to medical records and statements provided by defense counsel.  PSR ¶¶ 115-119;

Defense Sentencing Memorandum ("Def. Mem.") at 3, 6, 9, ECF No. 815.  In particular,

Defendant suffers from high blood pressure, lower back pain, dental problems, indigestion,

onychomycosis, prediabetes, and ventral hernia.  PSR ¶ 115.  Defendant was first diagnosed with

depression and paranoia while in state custody in 2009 or 2010 at age 14 or 15.  *Id.* ¶ 116.  Since

then, Defendant has received mental health counseling and medication during his periods of

incarceration.  *Id.* ¶¶ 116-118.  Defendant states his mental health challenges worsened around

the time five of his friends were killed in gang-related shootings.  *Id.* ¶ 118.  Defendant first

attempted suicide while in jail in 2017, but correctional officers stopped him. *Id.* Defendant attempted suicide again in 2019 and was then admitted to Columbia Presbyterian Hospital. Def. Mem. at 3. Defendant was recently diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder. PSR ¶ 118. Defense counsel states Defendant's depression and PTSD have worsened during his instant incarceration because of "extended periods of isolation," including when threats from other inmates led the GEO Queens Detention Center to place Defendant in the Special Housing Unit for 111 days of solitary confinement. Def. Mem. at 6; *see also* PSR ¶ 113.

      5.      Substance Abuse

Defendant began smoking marijuana and drinking alcohol at age 13. PSR ¶ 120. While in custody or under state parole supervision, Defendant received drug treatment counseling. *Id.* ¶¶ 121-122. He reported smoking marijuana last in 2017. *Id.* ¶ 120. Defendant has no history of other drug use. *Id.* ¶ 120.

      6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

      **B.**      **The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved participation in gang-related shootings, including shooting a rival gang member, as well as other gang-related racketeering activity and violent conduct extending back to his teenage years. *See supra* Part I. Following Defendant's instant arrest, he cooperated with and provided substantial assistance to the Government, including testifying at trial against his co-defendants and fellow gang members. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count Two of the Indictment in 20-CR-293, charging him with being a felon in possession of a firearm.  Plea Agreement ¶ 1.  He also pled guilty to all counts of the Information in 21-CR-312, charging him with racketeering (Count One); assault-in-aid-of-racketeering (Count Two); and possessing, brandishing, and discharging a firearm during a crime of violence (Count Three).  Agreement, ECF No. 9, 21-CR-312.

For Count Two of 20-CR-293, Defendant faces a maximum term of imprisonment of ten years and no minimum term of imprisonment.  18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Defendant also faces a maximum term of supervised release of three years.  18 U.S.C. § 3583(b)(2).  If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. § 3583(b) and (e).

For Counts One and Two of 21-CR-312, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment on each count.  18 U.S.C. §§

1959(a)(3), 1963(a), 1962(c).  Defendant also faces a maximum term of supervised release of three years.  18 U.S.C. § 3583(b)(2).  If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. § 3583(b) and (e).

For Count Three of 21-CR-312, Defendant faces a minimum term of imprisonment of 10 years and a maximum term of life.  18 U.S.C. § 924(c)(1)(A)(iii); *United States v. Johnson*, 507 F.3d 793, 798-99 (2d Cir. 2007).  The term of imprisonment on Count Three must run consecutively to all other counts.  18 U.S.C. § 924(c)(1)(D)(ii).  Defendant also faces a maximum term of supervised release of five years.  18 U.S.C. § 3583(b)(1).  If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. § 3583(b) and (e).

Defendant is ineligible for probation on all counts.  18 U.S.C. §§ 3561(a)(3) and 924(c)(1)(D)(i).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties.  Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b)(3).  However, Defendant appears unable to pay a fine.  PSR ¶ 134.  The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A).  Defendant's counts of conviction are subject to forfeiture allegations as outlined in the Order of Forfeiture.  Order of Forfeiture, ECF No. 28, 21-CR-312; *see also* Plea Agreement ¶¶ 6-12, 20-CR-293; Agreement ¶¶ 5-11, 21-CR-312.  Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case.  However, the amount of restitution is unknown at this time.  PSR ¶ 158.  Pursuant to guidance from *United States v.*

*Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified.  The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D.  The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Indictment ¶ 2, one count of racketeering, in violation of 18 U.S.C. §§ 1961(1), 1961(5), 1962(c), and 2; one count of assault-in-aid-of-racketeering, in violation of New York Penal Law ("NYPL") §§ 120.05(2) and 20 and 18 U.S.C. §§ 1959(a)(3) and 2; and, one count of possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2.  Information ¶¶ 8-24; Agreement ¶ 1.

The applicable Guideline for Count Two of 20-CR-293, charging Defendant with being a felon in possession of a firearm, is U.S.S.G. §2K2.1(a)(2), which provides a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Defendant has previous convictions for robbery in the second degree and attempted robbery in the second degree, which constitute "crimes of violence" as defined in U.S.S.G. §4B1.2(a).  Four levels are added pursuant to U.S.S.G. §2K2.1(b)(6)(B) because Defendant possessed a firearm in

connection with another felony offense—in this case, assault. Therefore, the applicable Guideline for Count Two of 20-CR-293 is 28.

The applicable Guideline for Count One of 21-CR-312, charging racketeering, is U.S.S.G. §2E1.1(a)(2), which provides that the base offense level is the greater of 19 or the offense level applicable to the underlying racketeering activity. Application Note 1 to the Commentary for U.S.S.G. §2E1.1 further explains that, where there is more than one underlying offense, each should be treated as if contained in a separate count of conviction. As such, the applicable Guidelines for the underlying racketeering acts are:

- Racketeering Acts One and Two: The applicable Guideline for uttering counterfeit obligations and dealing in counterfeit obligations is U.S.S.G. §2B5.1(a), which provides for a base offense level of 9.

- Racketeering Act Three: The applicable Guideline for conspiracy to murder rival gang members is U.S.S.G. §2A2.1(a)(1), which provides a base offense level of 33 because the underlying crime was attempted murder, the object of which would have constituted first degree murder under the Guideline.

- Racketeering Acts Four and Five: The applicable Guideline for attempted murder is U.S.S.G. §2A2.1(a)(1), which provides a base offense level of 33 because the underlying crime was attempted murder, the object of which would have constituted first degree murder under the Guideline.

- Racketeering Act Six Parts A and B: The applicable Guideline for marijuana distribution conspiracy and marijuana distribution is U.S.S.G. §§2D1.1(a)(5) and (c)(17), which provide a base offense level of 6 for offenses involving less than one kilogram of marijuana.

12

- Racketeering Act Seven Parts A and B: The applicable Guideline for obstruction of justice conspiracy and obstruction of justice is U.S.S.G. §2J1.2(a), which provides a base offense level of 14.

The applicable Guideline for Count Two of 21-CR-312, charging assault-in-aid-of racketeering, is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33 because the underlying racketeering activity is attempted murder, the object of which would have constituted first degree murder under the Guideline.

The applicable Guideline for Count Three of 21-CR-312, charging possessing, brandishing, and discharging a firearm during a crime of violence, is U.S.S.G. §2K2.4(b), which states the Guideline sentence is the minimum term of imprisonment required by statute, which is 10 years. *See* 18 U.S.C. § 924(c)(1)(A)(iii). This term is to run consecutively to any other term of imprisonment. *See* Application Note 2(A) to U.S.S.G. §2K2.4.

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. §3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by a certain number based on how many "units" exist across counts. In this instance, application of the grouping rules under U.S.S.G. §3D1.2 yields six groups:

- Group One: Racketeering Acts One and Two, with an adjusted offense level of 9.

- Group Two: Count Two of 20-CR-293, Count Two of 21-CR-312, and Racketeering Act Seven Part A and Part B, with an adjusted offense level of 28.

- Group Three: Racketeering Act Three and the uncharged November or December 2015 attempted murder, with an adjusted offense level of 33.[3]

---

[3] The uncharged criminal activity is included in the Guidelines calculations as relevant conduct pursuant to U.S.S.G. §1B1.3(a)(2).

13

- Group Four:  Racketeering Act Four, with an adjusted offense level of 33.[4]

- Group Five:  Racketeering Act Five, with an adjusted offense level of 33.

- Group Six:  Racketeering Act Six Parts A and B, with an adjusted offense level of 6.

Count Three of 21-CR-312 is not included in the multiple count analysis pursuant to U.S.S.G. §2K2.4(b).

Pursuant to the Multiple Count Analysis, Group One receives zero units; Group Two receives one-half units; Groups Three, Four, and Five receives one unit each; and Group Six receives zero units.  The total number of units under U.S.S.G. §3D1.4 is three and one-half units, which yields a four-level increase in Defendant's offense level.

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1.

Altogether, Defendant has a total adjusted offense level of 34.  All parties agree with this calculation.  *See* Addendum to the PSR at 2-6; Def. Mem. at 7; Gov't Mem. at 2.

Probation and the Government calculate Defendant's criminal convictions result in a criminal history score of six.  *See* Addendum to the PSR at 6; Gov't Mem. at 2-3.  Although Defendant committed the instant offenses while under a criminal justice sentence, no additional points are added pursuant to U.S.S.G. §4A1.1(e) because he received fewer than seven criminal history points under subsections (a) through (d).  Pursuant to the sentencing table contained in U.S.S.G. Chapter 5, Part A, a total criminal history score of six establishes a criminal history category of III.

---

[4] Racketeering Acts Four and Five in Count One of 21-CR-312 cannot be grouped pursuant to U.S.S.G. §3D1.2.

14

Defense counsel requests the Court depart or vary downward from criminal history category III to category I. Def. Mem. at 7-8. Defense counsel argues Defendant's two prior convictions should be excluded from his criminal history calculation because they occurred when he was 16 years old and would therefore "run contrary to both the Supreme Court and the Sentencing Commission's explicit recognition that juvenile defendants should be treated differently." *Id.* In particular, defense counsel states the Supreme Court has "held that defendants under the age of eighteen— such as sixteen year old Terrance Graham—'are constitutionally different from adults for purposes of sentencing' and therefore less deserving of severe punishments." *Id.* at 7 (citing *Miller v. Alabama*, 567 U.S. 460, 471 (2012)). Defense counsel adds the 2024 Amendments to the Sentencing Guidelines "include stronger language permitting a downward departure or alternative to incarceration to account for 'youthfulness' in an appropriate case. Notably, the downward departure confirms the relevancy of 'youthfulness at the time of the offense *or prior offenses*.'" *Id.* (citing 2024 Guidelines Amendments to U.S.S.G. §5H1.1). Relying on a criminal history category of I and a total offense level of 34, defense counsel calculates Defendant's Guidelines sentencing range is 151 to 188 months. Def. Mem. at 8. With the 10-year mandatory minimum consecutive sentence, defense counsel calculates a total effective Guidelines range of 271 to 308 months of imprisonment. *Id.* Nevertheless, the Court declines to follow defense counsel's calculations. Instead, the Court agrees with Probation and the Government that Defendant's criminal history category is correctly calculated as III based on the current and operative Sentencing Guidelines.

A criminal history category of III and a total offense level of 34 result in a Guidelines sentencing range of between 188 and 235 months of imprisonment. U.S.S.G. §5A; Addendum to the PSR at 7; Gov't Mem. at 2-3. According to Note 2(A) to U.S.S.G. § 2K2.4, the 10-year

mandatory minimum term of imprisonment for Count Three is to run consecutively to any other counts. *Id.* This results in a total effective Guidelines range of 308 to 355 months of imprisonment. *See also* Gov't Mem. at 3.

Probation states an upward departure may be warranted, pursuant to Application Note 2 to U.S.S.G. §2A2.1, because Defendant's participation in the instant offense created a substantial risk of death or serious bodily injury to more than one person. PSR ¶ 163.

The parties' recommendations as to an appropriate sentence vary. Probation recommends a sentence below both the Guidelines range and the statutory mandatory minimum. Specifically, Probation recommends a sentence of 60 months of imprisonment, two years of supervised release with special conditions, and payment of the mandatory $400.00 special assessment. Probation Recommendation at 1, ECF No. 620-1; *see also* Addendum to the PSR at 7. Probation does not recommend a fine because Defendant is unable to pay. Probation Recommendation at 3. Probation recommends Defendant be excused from the mandatory drug testing provisions of supervised release. *Id.* at 2. In recommending this sentence, Probation emphasizes the seriousness of the instant offenses, which included shooting at rival gang members and other individuals. *Id.* at 3. Probation also recognizes Defendant's "extraordinary" cooperation with the Government. *Id.* In particular, Probation notes Defendant was the only co-defendant to cooperate and testify at the trial of four co-defendants. *Id.*

Defense counsel requests a below-Guidelines sentence of time served followed by a lengthy period of supervised release. Def. Mem. at 1. Based on defense counsel's calculation, Defendant has already served approximately 56 months of imprisonment with good time credit. *Id.* Defense counsel argues such a sentence is justified based on Defendant's cooperation with the Government, which involved testifying at trial and, at great risk to himself and his family,

turning against those he previously considered family and close friends. *Id.* Defense counsel states Defendant first joined a gang at the age of 13, allured by the fake promise of a stable community. *Id.* at 4. Defense counsel argues Defendant has already faced sufficient punishment for his crimes: he has been in solitary confinement for extended periods of time for his own protection; he has been threatened and attacked by other inmates; and has lost significant family and community support. *Id.* at 8. According to defense counsel, Defendant's cooperation and testimony at trial have resulted in a sentence of lifelong exile for Defendant. *Id.* at 4, 8, 9. Defense counsel argues a sentence of time served will enable Defendant to build a new life and continue his rehabilitation. *Id.* at 1, 9.

This Court has read and considered the letters written by Defendant's psychiatric doctor, clinical counselor, family members, friends, and supporters, *see* Exs. A-D and F to Def. Mem., ECF No. 815-1 – 815-4, and 815-6, as well as the letter from Defendant himself, Ex. G to Defense Memorandum Supplement ("Def. Mem. Suppl."), ECF No. 82. The Court has also reviewed the certificates of achievement Defendant received while incarcerated. Ex. E to Def. Mem., ECF No. 815-5; Ex. H to Def. Mem. Suppl. The letters of support ask the Court for leniency and describe Defendant as a joyous and ambitious young man with artistic talent and a desire to be a better role model. *See* Exs. C, D, and F to Def. Mem. The Court appreciates what Defendant and Defendant's advocates have said on his behalf.

The Government does not specify a particular sentence; however, it moves the Court, in its discretion, to downwardly departure from the Guidelines sentencing range and the applicable statutory mandatory minimum in this case in light of Defendant's substantial assistance. Gov't Mem. at 1 (citing U.S.S.G. §5K1.1).

17

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.      Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

As noted *supra* Part III(D), defense counsel raises the 2024 Guidelines Amendments to the policy statement on "Age" under U.S.S.G. §5H1.1, which come into effect on November 1, 2024.

The Court has carefully considered the Government's 5K1.1 letter. The Court acknowledges the points made in that letter and factors them into its sentencing decision. Beyond U.S.S.G. §§5H1.1 and 5K1.1, the parties have not drawn the Court's attention to any other applicable policy statements. Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

### F.      The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.      The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

18

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. §
3663A.  The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary
hearing within 90 days after this sentencing to determine the specific amounts owed to
Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of time served; two years of
supervised release with both the standard and special conditions of supervised release; forfeiture
in accordance with the Order of Forfeiture; and the mandatory $400.00 special assessment.  This
sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2).
The Court does not impose a fine given Defendant's apparent inability to pay.  The Court
excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and
3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report
and its Addendum, as corrected herein, to the extent those findings are not inconsistent with this
opinion.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 15, 2024
Brooklyn, New York

19